## Palethorp Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

504

*White, Williams & Scott,* and *McWilliams, Wagoner & Troutman,* for exceptants.

*Townsend, Elliott & Munson,* contra.

SINKLER, P. J., January 27, 1950.—The chronicle of the cemetery trust created by the will of testator is related in the adjudication. The account was filed to obtain the determination of the court with regard to the disposition of an accumulation of income exceeding the principal over a period of years since the principal was awarded to the accountant.

At the audit the accountant submitted that the fund should be awarded to it, to be used for the purposes expressed in the will in respect of the trust. The next of kin asked that it be awarded to them. The auditing judge appointed his examiner to visit the cemetery and recommend how the balance should be awarded. He also received the testimony of the superintendent, by agreement of counsel. He awarded the balance to the reserve (invested) income accumulations account.

Exceptions have been filed by the next of kin. The brief of accountant against the exceptions concludes with a statement of the law applicable to the present case. It is to the effect that when the decision of the court is based upon the discretion of the hearing judge it will not be reversed on appeal, save where there exists manifest error. This is a correct statement of the law in such cases as the present. There is no such error in the present case, and we are of the opinion that the learned auditing judge has correctly exercised his discretion.

From its inception this has been an extraordinary case. In many respects it must be regarded as sui generis.

The first and perhaps most extraordinary feature of the case was testator's attempt to create a trust in the sum of $150,000 for the care and maintenance of the

Palethorp family lot, for the care, maintenance and renewal of any tombs and copings or rebuilding that might be required and for flowers to be placed and maintained there. The will also contained an amazing provision requiring the trustee to select a person to act as a special caretaker and guide to show people where the Palethorp family lot was located in the cemetery.

At the audit of the executor's account the next of kin challenged the validity of the trust.

Judge Dallett, the auditing judge, struck down the provision for the employment of the caretaker-guide but upheld the validity of the other provisions. He also held that the fund, which testator set aside for this trust was excessive. In reducing this amount Judge Dallett, in his adjudication (reported in 24 Dist. R. 215 (1915)) said, at page 221:

"As was represented at the audit, the cemetery now holds a fund of $1,000 for the care of this lot. Such reasonable amount as should be added for the purpose will be added, and the auditing judge, in the absence of an agreement of the parties, will determine what that amount should be at a subsequent audit. Perhaps so much as $10,000 would be reasonable. Any excess, in his opinion, must fall into residue and be distributed among the testator's next of kin, and he will, therefore, so award."

Exceptions to this portion of the adjudication were dismissed by the court en banc without discussion and similarly affirmed by the Supreme Court, 249 Pa. 389.

The opinion of the Supreme Court was filed May 10, 1915. Two months later, on July 8, 1915, this court approved a schedule of distribution, in which the sum of $5,000 was awarded to the trustee for the care of the cemetery lot. The schedule recited that this "amount is agreed to by all parties in interest".

It is therefore apparent, from our study of this record, that the Supreme Court never passed on the precise amount which should be reserved for this cemetery trust. Since the $5,000 which was actually set aside was the result of an agreement reached by the next of kin and the trustees, it cannot be regarded as having been fixed by our court, even though the schedule of distribution was formally approved by Judge Anderson.

Ordinarily, it would make little difference whether the amount set aside in trust for the care of a cemetery lot is fixed by the orphans' court or reached by agreement of the parties, if such agreement is approved by the court. In the present case, however, we regard this circumstance as significant. These parties, by mutual agreement, in effect assured this court that the income earned on the sum of $5,000 would be used to carry out the valid directions of the testator.

The fund of income, which is the subject of the present controversy, would not have existed if the stone work in the lot had been kept in proper repair, and the directions of the will as to the placing and maintenance of flowers had been observed. The replacement or repair of the stone work will necessitate the expenditure of large sums of money in the future. We are therefore all of the opinion that the auditing judge was clearly justified in directing that the accumulated income be set aside as a reserve fund to meet these contingencies, especially in view of the fact that the total sum presently in the hands of the trustees, including accumulations, does not materially exceed the sum of $10,000 which Judge Dallett indicated he regarded as reasonable in his original adjudication.

The exceptions are dismissed, and the adjudication is confirmed absolutely.